UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


STEPHEN S.,

     Plaintiff,                               Case No.
                                              Hon.


THE BOARD OF TRUSTEES OF THE
NATIONAL BASKETBALL PLAYERS ASSOCIATION,
in their capacity of employee welfare benefit plan sponsor
and plan administrator,
UNITEDHEALTHCARE OF NEW YORK, INC.,
a New York corporation,
UNITED BEHAVIORAL HEALTH,
a California corporation,
OPTUM, LLC, a Delaware corporation,
THE NBA PLAYERS' RETIREE MEDICAL PLAN,
an employee welfare benefit plan, and

     Defendants.
_____
JOHN JOSEPH CONWAY (P56659)
J.J. CONWAY LAW
Attorney for Plaintiff
26622 Woodward Ave., Suite 225
Royal Oak, MI 48067
(313) 961-6525
jj@jjconwaylaw.com
_____

**PLAINTIFF'S COMPLAINT FOR ENFORCEMENT OF THE RIGHT TO
EMPLOYEE WELFARE BENEFITS UNDER THE EMPLOYEE
RETIREMENT INCOME SECURITY ACT OF 1974 ("ERISA") AND THE
<u>MENTAL HEALTH PARITY AND ADDICTION EQUITY ACT OF 2008</u>**

PLAINTIFF STEPHEN S., by his attorneys, J.J. CONWAY LAW., and for his COMPLAINT against DEFENDANTS UNITEDHEALTHCARE OF NEW YORK, INC.; UNITED BEHAVIORAL HEALTH; OPTUM, LLC; and THE BOARD OF TRUSTEES OF THE NATIONAL BASKETBALL PLAYERS ASSOCIATION, states as follows:

## NATURE OF THE ACTION AND JURISDICTION

1.      This is a civil action brought pursuant to ERISA Section 502, 29 U.S.C. § 1132(a)(1)(B) regarding the breach of the terms of an employee welfare benefit plan and for the purpose of recovering the payment of medical benefits in the amounts and at the coverage levels promised, for an accounting, and the recovery of costs and attorney fees incurred as a consequence of the Defendants' failure to perform their obligations under the subject benefit plan.  The Complaint also alleges violations of the Mental Health Parity and Addiction Equity Act of 2008.

2.      This Court has jurisdiction pursuant to ERISA Section 502(e)(1), (f), 29 U.S.C. § 1132(e)(1), (f), and 28 U.S.C. § 2201, and Plaintiff has exhausted all required administrative remedies.

3.      Venue is proper in this District pursuant to ERISA Section 502(e)(2), 29 U.S.C. § 1132(e)(2), since Defendants conduct and transact business in this jurisdiction and the Plan operates within this District.

## THE PARTIES

4.      Plaintiff "Stephen S." is and was, at all relevant times, a "Participant" within the meaning of ERISA Section 3(7), 29 U.S.C. § 1002(7), in an employee welfare benefit plan ("the Plan,") through his employment and retirement from the National Basketball Association. Plaintiff, and his dependent-beneficiary, K.S., reside in Kent County, Michigan. Plaintiff's health plan is an employee welfare benefit plan, and the Plan purports to provide medical coverage to Plaintiff and his eligible dependent beneficiaries, one of whom is K.S., through Defendant Board of Trustees and whose mental health benefits are insured by United.

5.      Defendant Board of Trustees of the National Basketball Players Association – National Basketball Association Supplemental Benefit Plan Trust is the Plan Sponsor. Defendant is and was, at all relevant times, operating within this District, operating the welfare benefits plan of the NBA players and their families, including the State's lone NBA franchise, the Detroit Pistons.

6.      Defendant UnitedHealthcare of New York is a subsidiary of UnitedHealthcare, Inc., and is incorporated in New York. UnitedHealthcare of New York is the insurer of the medical benefit plan of which Plaintiff is a participant. Defendant is and was, at all relevant times, operating within this District, and acted as the insurer of Plaintiff's medical coverage benefits.

3

7.     Defendant United Behavioral Health ("UBH") is a California corporation that acts as the administrator of the mental health portion of the Plaintiff's employee welfare benefit plan. Defendant is and was, at all relevant times, operating within this District, and acted as the insurer of Plaintiff's mental health coverage benefits. UBH is a subsidiary of United Healthcare Services, Inc., a Minnesota corporation.

8.     Defendant Optum, LLC is a Delaware corporation and, in cooperation with a subsidiary of United Behavioral Health, developed and manages the "Level of Care Guidelines" used to administer the mental health benefits of Plaintiff's welfare benefit plan. Defendant is and was, at all relevant times, operating within this District.

9.     Defendants UnitedHealthcare of New York, United Behavioral Health, and Optum are subsidiaries of UnitedHealth Group, Inc., a Minnesota Corporation, or are subsidiaries of subsidiaries of UnitedHealth Group, Inc and are collectively referred to as "United" or the "United Defendants" throughout this complaint.

10.     Defendant NBA Players' Retiree Medical Plan is an ERISA – qualified welfare benefit plan, sponsored by The Board of Trustees of the National Basketball Players Association – National Basketball Association Supplemental Benefit Plan Trust, that has, upon information and belief, as its sole and exclusive purpose to

provide medical and mental health benefits to retirees of the National Basketball Association.

11.   Defendant Board of Trustees of the National Basketball Players Association also serves the Plan Administrator. Defendant is and was, at all relevant times, operating within this District, operating the welfare benefits plan of the NBA players and their families, including the State's lone NBA franchise, the Detroit Pistons.

12.   Under the terms of the Plan at issue, the United Defendants sought discretion to administer the Plan so that it functionally acts as both the Plan insurer and its primary claims "administrator" within the meaning of ERISA Section 3(16)(A)(I), 29 U.S.C. § 1002(16)(A)(I).

13.   All documents referenced in this Complaint are, or should be, in the possession of Defendants.

## GENERAL ALLEGATIONS

14.   Plaintiff re-alleges all preceding paragraphs.

15.   Plaintiff has been continuously insured through the NBA's medical retirement plan since his retirement from the NBA.

5

16.     A portion of the Plaintiff's retirement compensation comes in the form of his participation in the healthcare plan which provides medical coverage for Plaintiff and his eligible dependents, one of which is K.S.

17.     K.S., a beneficiary of the plan, suffered and continues to suffer from certain serious, objectively diagnosed physical and mental health conditions that require specialized care, including intensive inpatient residential treatment.

18.     K.S. has been diagnosed with, among other mental conditions, Severe Major Depressive Disorder, Generalized Anxiety Disorder, Obsessive Compulsive Disorder, Anorexia Nervosa, and Bulimia Nervosa and has communicated the intent to self-harm multiple times.

19.     K.S. has been diagnosed with, among other conditions, frequent Urinary Tract Infections, Rectal Prolapse, and Bladder Leakage.

20.     K.S. has struggled with medical and mental health issues since early childhood, including treatment for GERD, Rectal Prolapse, Obsessive Compulsive Disorder, hostility toward others, and sensitivity to their environment, leading to multiple diagnoses, including sensory processing disorder.

21.     K.S. has suffered from an eating disorder since just before their thirteenth birthday in 2017. These disorders led to K.S. obsessively running, attending dance classes, and tracking their food intake. K.S. began treatment for the

eating disorder the same year, attending classes and counseling at the Center for Eating Disorder (CED) in Grand Rapids, Michigan.

22.     After it became apparent that counseling and programming at CED was not working, K.S.'s counselors recommended K.S. be treated medically at the Rogers Behavioral Health Center in Skokie, Illinois. K.S. began treatment in Rogers' partial hospitalization program in the summer of 2018 but was eventually placed in inpatient care after self-harming by banging her head against walls and furniture and experiencing suicidal ideations.

23.     After being discharged from the hospital, K.S. went to Lindner Center of Hope in Mason, Ohio for psychological evaluation and treatment. Upon admission at Lindner Center, K.S. had been diagnosed with Anxiety, OCD, rumination disorder, and binging/purging eating disorder. After a few short weeks at Lindner Center, K.S. was once again hospitalized, this time at Cincinnati Children's Hospital. After improvement due to the structure and intensive therapy at Children's Hospital, K.S. was moved back to Lindner.

24.     After returning to Lindner, K.S. continued to be uncooperative and noncompliant with treatment. K.S. was released from Lindner in October 2018, with a strong recommendation from the Medical Director of Lindner Center of Hope that K.S. receive long-term residential care.

25.     Given the medical diagnoses, and the outward effects of K.S.'s condition, K.S. was in critical need of around-the-clock care with trained therapists and mental health professionals, to both protect K.S. from the potential danger their psychiatric condition posed.

26.     K.S. was to be admitted at Selah House residential treatment center directly after their discharge from Lindner, but Selah House cancelled this admission, owing to K.S.'s physical and psychological symptoms.

27.     As a result, K.S. returned home and received outpatient treatment, while their symptoms only became worse. K.S.'s mother and father pleaded with United Healthcare to allow K.S. to attend a residential treatment program, but United Healthcare refused. K.S's parents worked with an attorney to appeal this decision, but the appeal too was denied.

28.     Due to the ineffectiveness of K.S.'s outpatient therapy, their therapist recommended they attend residential treatment at Clementine residential treatment center in Miami, Florida. United Healthcare denied residential treatment center coverage for over one month, despite K.S. treatment providers' continual recommendations, and more importantly, K.S. continual mental health decline. Refusing to allow K.S. to decline further, K.S.'s parents flew with K.S. to Miami, Florida and began the admissions process at Clementine. In November 2018, United

Healthcare finally approved residential treatment for K.S. after they underwent psychological evaluation at Clementine. At that time, K.S. was diagnosed with Recurrent Major Depressive Disorder, OCD, and Bulimia Nervosa.

29.    While K.S. did become more physically healthy at Clementine by gaining weight, her depression and OCD became worse. K.S. began cutting on their own stomach because they perceived their stomach to be fat. At this time, K.S. was diagnosed with body dysmorphia, which is a condition K.S. continues to suffer from. K.S. was involuntarily admitted to an emergency facility, via the Baker Act, after threatening to take their own life in February 2019.

30.    After being discharged from Clementine because of self-injurious behavior and ideation, K.S. was hospitalized in an emergency facility. After discharge, K.S. received treatment at Fort Lauderdale Behavioral Health and Neurobehavioral Institute in Weston, Florida. K.S. was at each facility for five days. After attempting to cut herself during therapy at the Neurobehavioral Institute, K.S. was once again held under the Baker Act, at Joe DiMaggio Memorial Hospital, until March 6, 2019.

31.    K.S.'s parents hired a consultant to best understand the options available for K.S.'s treatment. The consultant, as well as Dr. Moritz of the Neurobehavioral Institute, indicated that the only remaining option to treat K.S. was

to fly them to the Innercept facility in Coeur d'Alene, Idaho. Wanting to provide the best care that they could for K.S., K.S.'s parents approved the treatment and K.S. was flown to Idaho where K.S. was admitted to the Innercept residential treatment facility.

32.    K.S. was admitted to Innercept on March 6, 2019. The doctors, therapists, and other medical professionals at Innercept have indicated that approximately 6 months represents about a midway point during a recommended course of treatment. K.S. underwent six months of treatment as of September 9, 2019. United Healthcare has paid for only forty days of treatment.

33.    Initially, UBH approved payment for medical services at Innercept for the period of March 6, 2019 through April 14, 2019.

34.    Defendant UBH denied coverage for residential in-patient treatment as of April 14, 2019 onward as 'not being medically necessary,' stating that care in a much less restrictive setting, such as psychiatric outpatient treatment, should be adequate.

35.    Despite the medical necessity denial, K.S.'s healthcare providers adamantly recommended continuation of Residential treatment. Plaintiff initiated an appeal of the denial from United Healthcare, which was denied in October 2019. However, in the interim period, and thereafter, until January 20, 2020, in order to

continue the residential treatment that K.S. needed, Plaintiff was forced into a private pay arrangement for treatment to avoid K.S's immediate discharge from Innercept.

36.     On October 9, 2019, Plaintiff requested an urgent appeal/grievance review, which was completed on October 23, 2019. UBH upheld its prior decision to deny payment of the mental health benefits to which Plaintiff was entitled.

37.     Plaintiff requested the claims record and other claims information from UBH and the Board of Trustees under 29 C.F.R. § 2560.503-1.

38.     Both Defendants denied access to the records, despite the legal requirement to provide the claims file.

39.     Plaintiff, through his counsel, contacted Defendant United Healthcare and protested the refusal to produce the claims information. This protest and further demands for the complete claim file were reiterated by letter dated February 21, 2020.

40.     At the time of this filing, United has maintained its refusal to grant access to the Plaintiff's claims file in its entirety.

41.     As it currently stands, United has denied all appeals and has refused to produce full access to its records concerning Plaintiff's claim.

42.     According to the Plan's terms, residential inpatient mental health coverage shall be provided to Plaintiff's eligible dependents if it is medically

necessary and preauthorized, where possible, by both the eligible dependent's healthcare provider and United.

43.     The medical providers for K.S. determined that K.S. required residential inpatient care, at a facility specializing in the treatment of their mental health conditions, because of the severity of their condition and the danger it posed to K.S.

44.     K.S. required a continuous period of treatment and stay at Innercept. While being treated there, K.S. was required to attend daily group therapy sessions, individual sessions twice per week, and family therapy sessions once per week.

45.     During K.S.'s entire treatment history, including treatment at Innercept, K.S. has suffered from multiple medical conditions, including rectal prolapse, severe constipation, frequent urinary tract infections, and bladder leakage. The physical strain and mental stress and anguish this has caused K.S. has severely complicated and impeded K.S.'s mental health treatment.

46.     The treatment at Innercept was initially preauthorized and was deemed medically necessary by the Defendant's own behavioral health medical reviewers.

47.     Plaintiff has incurred significant expense, totaling at least $172,845.50, in covering the cost of K.S.'s treatment at Innercept, transportation from a Florida treatment center to the Innercept, in Idaho, and prescription medication while K.S.

was being treated at Innercept. Plaintiff has also been forced to retain an attorney to litigate his rights under the Plan and file numerous appeals.

48.     Plaintiff has exhausted all administrative remedies. Defendant United has denied each of Plaintiff's ERISA appeals, and he may now seek judicial review.

49.     Plaintiff supplied Defendants with adequate and substantial proof of loss.

50.     Under the terms of the policy, Plaintiff is fully entitled to the immediate payment of all past-due medical benefits.

51.     Upon information and belief, the monetary value of Plaintiff's claim played a role in the wrongful actions of Defendants.

52.     Additionally, upon information and belief, Defendants' disparate treatment of the mentally ill is part of a widespread pattern designed to deny medically necessary, albeit costly, inpatient residential care claims, like those in this case.

53.     Further, upon information and belief, the development of the Optum Level of Care Guidelines was intended to, and did in fact, serve to arbitrarily limit mental health benefits without actual consideration of medical necessity and completely divorced from the standards of care and best practices used by healthcare providers.

54.     Defendants' handling of both the claim and appeal process has resulted in a clear abuse of discretion and has violated every right permitted to participants, like Plaintiff, under ERISA to have a full and fair review of their claims by appropriate fiduciaries who interpret plan provisions for the "exclusive benefit of Plan participants" as is required by ERISA under Section 503, 29 U.S.C. § 1133.

55.     Plaintiff's benefits for his eligible dependent were improperly denied under ERISA.

56.     All attempts at finding a resolution of this situation have failed.

57.     The judicial standard of review to be applied is *de novo*, and Plaintiff asserts that the claim denials were motivated by a lack of impartiality and a financial conflict of interest.

## COUNT I
## ACTION UNDER ERISA SECTION 502(a)(1)(B),
## 29 U.S.C. § 1132(a)(1)(B) TO RECOVER FULL EMPLOYEE BENEFITS
## AGAINST DEFENDANTS

58.     Plaintiff re-alleges all preceding paragraphs.

59.     ERISA imposes a "higher than marketplace" standard upon insurers providing benefits to employee welfare benefit plans. *Glenn v. Metropolitan Life Ins. Co.*, 554 U.S. 105 (2008).

60.     Defendant United Healthcare insured and administered an ERISA Group Health Care Plan, while operating under a structural conflict of interest, to provide medical benefits, including mental healthcare benefits.

61.     Plaintiff, a participant under the plan, satisfied the eligibility criteria and was entitled to full benefits thereunder which included in-patient residential treatment for the conditions from which she is afflicted.

62.     Plaintiff submitted a series of medically necessary claims for K.S.'s mental health treatment, which Defendants have improperly denied.

63.     The United Defendants have failed to properly interpret Plaintiff's Plan such that K.S. has been found ineligible for the coverage of certain medical benefits, despite fully meeting the Plan's published coverage requirements.

64.     United's actions are incorrect, unreasonable, and a breach of the Plan documents.

65.     Plaintiff made attempts to redress this violation of his rights by, among other efforts:

a.     Filing multiple administrative appeals within the time-frames established by the Plan;

b.     Submitting written proof of loss for the payment of medical benefits; and

c.     Following all recommendations from Defendant's representatives for the resolution of medical claim coverage.

15

66.    Defendants failed to properly carry out their fiduciary duties by denying the covered medical benefits of Plaintiff's eligible dependent, and Defendants' actions violate well-settled ERISA case law concerning the proper administration of employee benefits.

67.    Each communication Plaintiff has ever received regarding his submitted claims has come from an authorized representative of the Defendants.

68.    Additionally, each appeal determination was arrived at by consultation with a medical reviewer under the employ of Defendants.

69.    Defendants' actions also violate the duty to review Plaintiff's claim for "the exclusive purpose of providing benefits to the plan participants," not for its own financial profit motivations.

70.    Defendants' denial of Plaintiff's claim also violates the protections set forth in ERISA Section 503, 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503-1(g)(1)(v)(A) & (j)(5)(i), as Defendants have refused to produce the complete administrative claims file in advance of litigation, including, importantly, its protocols and guidelines regarding course of treatment coverage in an effort to frustrate and hamper the advancement of this claim.

71.    Because of this, Plaintiff is entitled to the full reimbursement for all denied medical benefits under his Plan.

72.    The amount due and owing for unpaid benefits to Plaintiff is $172,845.50.

73.    Defendants' actions have also violated the Mental Health Parity and Addiction Equity Act of 2008 by which this ERISA qualified plan must comply.

WHEREFORE, Plaintiff requests judgment be entered against Defendants and in favor of Plaintiff, adjudging that Plaintiff is entitled to full payment of his claim for medical benefits, all other damages, interest, attorney fees, and other appropriate relief to which this Court deems just.

**COUNT II –**
**ACTION UNDER ERISA SECTION 502(c), 29 U.S.C. § 1132(c) AGAINST**
**THE UNITED DEFENDANTS AND BOARD OF TRUSTEES OF THE**
**NATIONAL BASKETBALL PLAYERS ASSOCIATION**

74.    Plaintiff realleges all preceding paragraphs.

75.    Plaintiff is and was an ERISA plan "participant" and his dependent family members were ERISA plan "beneficiaries" as those terms are defined by the statute.

76.    Plaintiff and his dependent beneficiaries are, and were, at all times entitled to truthful and accurate communications concerning their rights and benefits, as those plan rights are and were administered by third-parties, as is recognized in *Krohn v. Huron Memorial Hosp*., 173 F.3d 542 (6th Cir. 1999).

77.    The United Defendants and the Board of Trustees acted as fiduciaries

of the Plaintiff's healthcare plan.

78.     United developed and managed Level of Care Guidelines designed to arbitrarily limit the receipt of medically necessary mental health benefits in violation of ERISA and the Mental Health Parity and Addiction Equity Act of 2008.

79.     Further, United Behavioral Health has been found by a federal district court judge to intentionally interpret these guidelines in such a way as to arbitrarily, and without regard to the health and safety of its members and plan participants, deny coverage of medically necessary mental health benefits.

80.     Because ERISA requires the Defendants to discharge their fiduciary duties with respect to a plan solely in the interest of the participants and beneficiaries and with utmost, undivided loyalty to their interests, it was a violation of those duties to provide false, misleading, or incorrect statements concerning the promised level of coverage to be provided for inpatient residential care treatment for mental health treatment.

81.     Defendants and their agents are required under 29 U.S.C. § 1132, and the Plan itself, to provide Plaintiff with all claim documents requested by a participant or their authorized representative.

82.     ERISA, and the Plan, provide for per diem penalties for each day requested documents are not produced upon request.  Defendants have withheld

these documents for more than 200 days.

83.    Moreover, in denying Plaintiff's claim for mental health benefits, United utterly failed to provide the necessary reasoning and supporting documentation necessary to enable Plaintiff and his representatives to effectively appeal the denials.

84.    While Plaintiff is entitled to per diem penalties under ERISA Section 502(c), he is also eligible for appropriate equitable relief under ERISA Section 502(a)(3) requiring, without limitation, a finding that Defendants' actions have caused an equitable waiver or estoppel as to any plan provisions contrary to Defendants' representations and/or to impose a surcharge to cover the benefits promised to Plaintiff.

85.    Because of the clear breaches of fiduciary duty as described above, Plaintiff has suffered harm, and continues to be harmed, by the acts or omissions detailed above.

WHEREFORE, Plaintiff requests equitable relief as set forth above, including injunctive relief and surcharge, in his favor and against the Defendants plus costs, interest, and attorney fees, equitable disgorgement, declaratory relief, and any other relief to which Plaintiff is entitled.

## COUNT III –
## THE UNITED DEFENDANTS AND THE BOARD OF TRUSTEES OF THE
## NATIONAL BASKETBALL PLAYERS ASSOCIATION VIOLATED THE
## MENTAL HEALTH PARITY AND ADDICTION EQUITY ACT

86.     Plaintiff realleges all preceding paragraphs.

87.     Defendants' actions constitute a violation of the Mental Health Parity

and Addiction Equity Act of 2008 ("MHPAEA,") 110 P. L. 343, 122 Stat. 3765,

2008, codified within ERISA as Section 712, 29 U.S.C. § 1185a.

88.     Defendants' actions constitute the unlawful imposition of treatment

limitations which are "more restrictive than the predominant financial requirements"

or are "more restrictive than the predominant treatment limitations applied to

substantially all medical and surgical benefits covered by the plan." ERISA Section

712(a)(3)(A)(i-ii), 29 U.S.C. § 1185a(a)(3)(A)(i-ii).

89.     Violations of the MHPAEA are enforceable under ERISA Section

502(a)(3), 29 U.S.C. § 1132(a)(3).

90.     The MHPAEA requires that plans that offer behavioral health benefits

are required to offer those benefits at parity with comparable medical or surgical

benefits. The MHPAEA mandates coverage for intermediate facilities, as they are

"effective at improving outcomes for people with mental health conditions..."

91.     Because Innercept provides services that are less intensive than acute

hospitalization and more intensive than outpatient therapy, it qualifies as an

intermediate behavioral health facility under the MHPAEA.

92.     Defendants must administer benefits for intermediate behavioral health facilities in such a way as comparable to the administration of benefits for medical facilities, such as skilled nursing facilities. These "level of care guidelines," defined by Defendants and/or Defendants' agents, do not administer these benefits at parity.

93.     Intermediate level of care guidelines for medical benefits do not require "acute symptomatology." Defendants require the consideration of acute symptomatology for residential mental health treatment centers, as is evidenced in the "Optum Level of Care Guidelines" referred to in Defendants' communications.

WHEREFORE, Plaintiff requests damages, equitable relief as set forth above, including injunctive relief and surcharge, in his favor and against the Defendants plus costs, interest, and attorney fees, equitable disgorgement, declaratory relief, and any other relief to which Plaintiff is entitled.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff respectfully requests:

1.     An order compelling Defendants UnitedHealthcare of New York, United Behavioral Health, Optum, LLC, and the Board of Trustees of the National Basketball Players Association, to forthwith pay Plaintiff the full amount of past due medical benefits on behalf of his eligible dependent, including interest;

2.      An accounting and award of all unpaid benefits to date and all costs and

fees associated with pursuing that accounting;

3.      An award of reasonable attorneys' fees and costs pursuant to ERISA

Section 502(g)(1), 29 U.S.C. § 1132(g)(1) for having to bring this claim; and

4.      All such other legal or equitable relief as may be just and appropriate.

Respectfully submitted,

**J.J. CONWAY LAW**
Attorneys for Plaintiff

By:     s/John J. Conway
   John J. Conway (P56659)
   26622 Woodward Ave., Suite 225
   Royal Oak, Michigan 48067
   (313) 961-6525
Dated: August 13, 2020  jj@jjconwaylaw.com

## **JURY DEMAND**

Plaintiff hereby demands trial by jury.

Respectfully submitted,

**J.J. CONWAY LAW**
Attorneys for Plaintiff

By:     s/John J. Conway
   John J. Conway (P56659)
   26622 Woodward Ave., Suite 225
   Royal Oak, Michigan 48067
   (313) 961-6525
Dated: August 13, 2020  jj@jjconwaylaw.com

22